IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                      Plaintiff,

   v.

JASON NICHOLS,

                      Defendant.

OPINION & ORDER

15-cr-51-jdp

---

      Defendant Jason Nichols has been charged with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Nichols has moved to suppress the evidence underlying Count 2, namely statements that he made to U.S. Probation Officer Kristin Kiel and the contraband ammunition that she recovered from him as a result of these statements. Dkt. 19. Nichols claims that he made the statements and turned over the ammunition only because Kiel had promised that he would not get in trouble if he did so. The government opposes the motion, disputing Nichols's claim that he was tricked into incriminating himself by Kiel's false assurances of immunity. After an evidentiary hearing, the magistrate judge issued a Report and Recommendation that Nichols's motion be denied. Dkt. 31. Nichols objects to the Report and Recommendation. Dkt. 36. I will overrule his objection.

      Pursuant to 28 U.S.C. § 636(b)(1) and this court's standing order, I am required to review de novo the objected-to portions of the Report and Recommendation. The Report and Recommendation states the background facts, which Nichols does not dispute, so I do not need to repeat them here. And the essential legal principle is clear: an incriminating statement acquired through a false promise of leniency is not truly voluntary, and thus it

would be inadmissible. *United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009). It is the government's burden to prove by a preponderance of the evidence that Nichols's statements and his surrender of the ammunition were voluntary. *Id*. at 1128-29.

So the central issue is simple: did Kiel promise Nichols immunity? As the magistrate saw it, this is a straightforward credibility contest. The magistrate heard the testimony of both Kiel and Nichols, and he believed Kiel, who denied making any such promise to Nichols. Because the magistrate held an evidentiary hearing and heard the evidence, I would not overturn his credibility determination unless Nichols gave me good reasons to do so. Nichols offers three reasons, but I am not persuaded by any of them.

A.  Reliance on disputed and "extraneous" facts

Nichols contends that the magistrate relied on disputed and immaterial facts in judging his credibility. The contested facts relate to the conduct that underlies Count 1 of the indictment. On January 7, 2015, police were called to Nichols's home, where they arrested Nichols and recovered a firearm and ammunition. Witnesses reported that Nichols had been drinking and that he had physically assaulted at least one person. At some point, he retrieved a firearm or a knife with which he threatened the victim. Nichols contends that "no mention of drunkenly brandishing a gun was made in the limited record pertaining to this immediate matter," and so it was error for the magistrate to consider this information in evaluating Nichols's credibility. Dkt. 36, at 3. But this information *was* in the record, in the Pretrial Services Report that described police reports of the incident. Dkt. 5. Because Nichols was under supervision by this court, some of this information was also included in a violation report filed by Kiel, at Dkt. 31 in case no. 13-cr-124-jdp.

Kiel indicated in her violation report that during Nichols's supervision, he had repeatedly denied possessing any firearms or ammunition. After his January 7 arrest, Nichols told Kiel that he had forgotten about the hand gun that was recovered from his home. The magistrate considered Nichols's disavowals of guns and ammunition, and his statement that he had forgotten about the handgun, to be lies because Nichols was able to retrieve the weapon at his home when he was drunk and angry.

Nichols contends that it was improper for the magistrate to consider the information concerning the January 7 incident. Nichols further contends that the allegations about his conduct on January 7 are disputed, and that it was unfair for the magistrate to consider this information because it did not come up during the suppression hearing, when Nichols would have had the chance to rebut it. Nichols also contends that information about the events of January 7 is "extraneous" to the real issue at the suppression hearing, which was Kiel's purported promise to Nichols.

I am not persuaded. Nichols will be entitled to contest the facts concerning the events of January 7 at trial. But Nichols's credibility is the central issue on his motion to suppress, and the magistrate was right to consider all the information available to evaluate it. Nichols made statements to Kiel that, at least implicitly, conceded that he possessed the handgun and ammunition recovered by the police on January 7. In his statements to Kiel, Nichols did not deny that he possessed a firearm and ammunition; he said that he had forgotten that he had them. The retrieval of guns and ammunition from Nichols's home shows that Nichols's previous denials that he had firearms or ammunition were false. And information that Nichols could retrieve the handgun when he wanted it is evidence that Nichols's denials were *knowingly* false. The information about the January 7 incident is hearsay. But the court may

3

consider hearsay in deciding a motion to suppress evidence. *United States v. Marzook*, 435 F. Supp. 2d 708, 747-48 (N.D. Ill. 2006) (citing *United States v. Raddatz*, 447 U.S. 667, 679 (1980)).

It is also fair to consider information about the events of January 7 in evaluating Nichols's credibility.[1] The allegation that Nichols had possessed a firearm during an incident that lead to his arrest is obviously part of the factual background of this case. At the hearing, Nichols himself relied on an email that he sent to his attorney that referred to "the incident." Dkt. 22-3. So if Nichols wanted to dispute what happened during the incident that led to his arrest, then he could have done so at the hearing. He also could have challenged these facts in his objection to the magistrate's Report and Recommendation. But other than a conclusory statement that these facts are disputed, Dkt. 36, at 2, Nichols did not do so.

In sum, Nichols's repeated denials that he had guns or ammunition, and his later claim that he had simply forgotten that he had guns and ammunition, are central to his credibility. There is nothing improper or unfair about the magistrate's consideration of hearsay evidence concerning Nichols's alleged possession and use of firearms on January 7, 2015.

## B. Nichols's actual state of mind

Nichols contends that the magistrate misstated the law concerning whether Nichols had been tricked into providing inculpatory statements and evidence. The Report and Recommendation stated that "perhaps Nichols has convinced himself that Kiel really did

---

[1] The case that Nichols cites, *United States v. Booker*, 447 F. App'x. 726 (7th Cir. 2011), is inapposite. *Booker* held that at sentencing, a district court may not rely on information that is not in the record, and that a defendant is not required to preserve an objection to information that appears for the first time in the court's sentencing order or explanation. 447 App'x at 729. These circumstances are not present in this case.

offer him absolution in the abstract, but he has not convinced the court. I will not speculate as to Nichols's actual thought process . . . . " Dkt. 31, at 9. Nichols contends that "his actual thought process" matters.

A defendant's state of mind matters sometimes. If an officer does not actually promise immunity, but wrongfully induces a defendant's perception of immunity, then the defendant's state of mind matters. *United States v. Stadfeld*, 689 F.3d 705, 710 (7th Cir. 2012). In other words, an inculpatory statement may be inadmissible if it is based on a defendant's incorrect, but nevertheless reasonable, belief about a promise of immunity.

But that is not the case here. The facts of this case present a stark, binary contrast between two alternative versions of the facts: Nichols claims that Kiel expressly promised him immunity; Kiel denies ever saying such a thing. If Nichols is right that Kiel promised him immunity, then the statements to Kiel and the ammunition must be suppressed. The decisive fact is what Kiel said, and it does not matter at all what Nichols believed. If Kiel did not make the promise, then it does not matter whether Nichols somehow convinced himself that she had. The Report and Recommendation is not based on an erroneous view of the law: under the facts of this case, Nichols's actual state of mind is irrelevant.

## C.  Overall coherence of the Report and Recommendation

Nichols contends that the magistrate's credibility evaluations of Kiel and of Nichols are fundamentally incoherent. The gist of this argument is that there is no reasonable explanation for why Nichols would turn over the ammunition and incriminate himself unless Kiel had promised him immunity. If Kiel had not promised immunity, then Nichols would have simply dumped the ammunition and kept quiet. This is a decent argument, and Nichols made it to the magistrate. But he was not convinced, and neither am I.

There are several logical explanations for why Nichols would have turned over the ammunition to Kiel even if she had not promised immunity. First, maybe he really believed, albeit mistakenly, that Kiel had promised immunity. Second, maybe he believed that dumping the ammunition would only make things worse because the dumping might somehow have been discovered. After all, Nichols contented that he was obligated by the terms of his supervision to disclose the ammunition to Kiel. Third, maybe he thought that after his arrest, he would build some useful goodwill by owning up to his possession of the ammunition. And fourth, maybe he just hoped that he would not be charged with the ammunition. Any combination of these reasons could explain Nichols's decision to turn over the ammunition to Kiel without a promise of immunity.

The bottom line is that the magistrate had to decide whether to believe Nichols's version of the facts or Kiel's version. Nichols made statements denying that he possessed firearms and ammunition, which turned out to be untrue (a point which Nichols does not challenge). This alone would be reason enough to discount Nichols's testimony that Kiel promised him immunity. The magistrate concluded, based on information about the January 7 incident, that Nichols's denials were not only false, but also *intentionally* false. This was a reasonable inference to draw, and it provides additional support for the magistrate's conclusion that Kiel had not promised Nichols immunity.

ORDER

Defendant Jason Nichols's objections to the Report and Recommendation, Dkt. 36,


---

are OVERRULED and defendant's motion to suppress, Dkt. 19, is DENIED.

Entered October 20, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge